**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHERINE SCONIERS, | Case No. 1:25-cv-01350 JLT FJS |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS IN PART WITH LEAVE TO AMEND IN PART |
| v. | |
| CARRINGTON MORTGAGE SERVICES LLC, et al., | (Doc. 5) |
| Defendants. | |

Katherine Sconiers alleges Carrington Mortgage Services, LLC, violated state and federal laws and regulations in connection with a nonjudicial foreclosure sale of a residential property. Carrington moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5.) The motion is **GRANTED IN PART**, and the Court will permit Sconiers to make limited amendments to her complaint, specified below.

**ALLEGATIONS**

Sconiers's father obtained a mortgage loan on a residential property in Visalia, California, in 2016, which Sconiers alleges is her residence. (Doc. 1-1 at 9.) Her father passed away in August 2021. (*Id.*) For reasons that are not currently clear, there was a default on the mortgage loan, and a notice of default and election to sell was recorded in August 2022. (*Id.* at 10, 45–52.) The notice cited unpaid amounts from February 2022 onward. (*Id.* at 47.)

1

After the notice of default was recorded, the estate's administrator executed a quitclaim deed conveying title in the Visalia property to Sconiers. (*Id.* at 10, 41–43.)  She alleges she "had no issues with paying on the account for the mortgage loan" with the loan's servicer at that time. (*Id.* at 10.)  But in April 2023, an assignment of the deed of trust to Carrington was recorded. (*Id.*)  Carrington refused to communicate with Sconiers at all because she was "not on the loan." (*Id.*)  She alleges that she attempted to contact Carrington but was "ignored," and she alleges Carrington never told her "what additional documents were needed to confirm her as successor." (*Id.*)  She also attempted to discuss loan modifications and alternatives to foreclosure, all without success. (*See id.* at 11.)  A notice of trustee's sale was eventually recorded in July 2025, and the property was sold at a nonjudicial foreclosure sale in August of that year.  (*Id.* at 11.)

Sconiers filed this lawsuit against Carrington in state court.  (*See id.* at 7.)  She asserts five claims.  Her first two claims are based on two sections of the California Civil Code that were added as part of a set of enactments commonly known as the "Homeowners Bill of Rights" or "HBOR."  (*See id.* at 12–13 (citing Cal. Civ. Code §§ 2923.5, 2924.9).)  Her third and fourth claims are based on federal regulations implementing the Real Estate Settlement Procedures Act or "RESPA."  (*See id.* at 13–15 (citing 12 C.F.R. § 1024.35, 1024.38).)  Her fifth claim is based on the California Unfair Competition Law.  (*See id.* at 15–16 (citing Cal. Bus. & Prof. Code § 17200 et seq.).)

Carrington removed the case to this court and moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 5.)  Sconiers opposes the motion (Doc. 9), and Carrington filed a reply (Doc. 11.)  The Court found a hearing was not necessary.  (Doc. 10.)

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) permits motions to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion tests a complaint's "legal sufficiency," *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), that is, whether it is based on "a cognizable legal theory" and includes "sufficient facts" to support that theory, *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The district court's task is to decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This is a "context-specific task."  *Id.* at 679.  The court must draw on its "judicial experience and common sense," *id.*, and accept "all reasonable inferences in favor of the nonmoving party," *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)).

## I.      CLAIMS 1 AND 2 (HBOR)

Sconiers's first two claims both rely on provisions in the state's Civil Code that impose obligations on mortgage servicers vis-à-vis the "borrower."  *See* Cal. Civ. Code §§ 2923.5(a)(2), 2924.9(a).  Carrington argues Sconiers was not a "borrower" and cannot rely on these provisions.  (Doc. 5 at 9.)

The word "borrower" is defined in section 2920.5.  It means "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or though, his or her mortgage servicer."  Cal. Civ. Code § 2920.5(c)(1).  Carrington does not allege or argue that she is a "mortgagor" or "trustor" or that she is potentially eligible for a foreclosure prevention alternative program.  She argues "borrower" also includes successors in interest, citing a section of the Civil Code that was repealed automatically several years ago when the Legislature did not renew it.  *See* 2019 Cal. Stat. Ch. 497, § 27 (A.B. 991) (enacting Cal. Civ. Code § 2920.7); Cal. Civ. Code § 2920.7(o) (2019) ("This section shall remain in effect only until January 1, 2020, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2020, deletes or extends that date.").  That section did extend rights to successors in interest in some circumstances, but because it was not renewed, she cannot rely on it.  *See, e.g.*, *Mattos v. Nationstar Mortg., LLC*, No. 24-02508, 2025 WL 1263985, at *3 (E.D. Cal. May 1, 2025).

Thus, the motion to dismiss claims one is **GRANTED**.  Sconiers requests leave to amend, but she does not propose any allegations that might show she was a "borrower" for purposes of sections 2329.5 or 2924.9.  (*See* Doc. 9 at 13.)  The Court cannot conceive of any potential amendment.  Claims one and two are dismissed without leave to amend, as an amendment would

be an exercise in futility.  *See Doe v. Garland*, 17 F.4th 941, 950 (9th Cir. 2021) ("A district court acts within its discretion to deny leave to amend when amendment would be futile." (citations omitted)).

## II.    CLAIMS 3 AND 4 (RESPA)

In Sconiers's third claim, she cites a federal regulation that imposes obligations on mortgage servicers who receive a written notice from a borrower "that asserts an error." 12 C.F.R. § 1024.35(a).  She alleges that under this section, "a servicer must provide the successor in interest written information with respect to any loan." (Doc. 1-1 at 14).  She does not identify any particular provisions within section 1024.35 that impose this obligation, but she appears to be relying on section 1024.35(e)(4).  That subsection requires mortgage servicers to "provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 days . . . of receiving the borrower's request for such documents."  Sconiers does not allege that she gave written notice of an "error" that might have triggered this obligation, however, and she does not allege that she requested documents.  The motion to dismiss claim three is **GRANTED** with leave to amend, so that she may add allegations about any such notices and errors, if there were any.

In claim four, Sconiers alleges Carrington violated 12 C.F.R. § 1024.38, which imposes an obligation on servicers to "maintain policies and procedures that are reasonably designed to achieve" several specific objectives.  (*See* Doc. 1-1 at 14–15.)  There is no private right of action under § 1024.38.  *See, e.g.*, *Shiflett v. Lakeview Loan Servicing, LLC*, No. 23-00397, 2025 WL 603616, at *7 (E.D. Cal. Feb. 25, 2025); *Vanisi v. Citibank, N.A.*, No. 23-02835, 2024 WL 1091196, at *2 (N.D. Cal. Feb. 26, 2024).  Even so, Sconiers's complaint does not include allegations about Carrington's policies.  For that reason, her allegations would not support a claim under § 1024.38, even if she could pursue one.  *See, e.g.*, *Calcut v. Paramount Residential Mortg. Grp. Inc.*, No. 22-01215, 2024 WL 233175, at *4 (D. Ariz. Jan. 22, 2024) (rejecting similar claims), *aff'd*, No. 24-764, 2025 WL 1341672 (9th Cir. May 8, 2025).  The motion to dismiss claim four is **GRANTED** without leave to amend.  Any amendment related to section 1024.38 would be futile.  *See Doe*, 17 F.4th at 941.

### III.    CLAIM 5 (UCL)

Sconiers's fifth and final claim is for a violation of the California Unfair Competition Law, or "UCL." "The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 20 Cal. 4th 163, 181 (1999)). "It prohibits 'unfair competition,' which it broadly defines as including 'any unlawful, unfair or fraudulent business act or practice[.]'" *Id.* (quoting Cal. Bus. & Prof. Code § 17200). Because the UCL uses the word "or," each part of this three-part definition can support a claim; an "unfair" act or practice might violate the UCL even if it was neither a "fraudulent" nor an "unlawful" act, for example. *Id.* (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999)).

Carrington argues Sconiers cannot pursue any claim under the UCL at all, however, because in its view, she did not lose money or property as a result of its actions. (Doc. 5 at 16–17.) "The foreclosure sale," it argues, was "the direct result of the loan's default in 2022," i.e., before Carrington came on as servicer. (*Id.* at 15.) This argument does not take adequate account of Sconiers's allegations about foreclosure sale and its causes. Sconier's allegation that her property was "sold at a foreclosure sale is sufficient to satisfy the economic injury prong of the standing requirement" of the UCL. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 82 (2013). Her allegations that Carrington refused to recognize her as her father's successor in interest and refused to discuss the loan with her suffice together to show that her loss was "a result of" Carrington's actions as well. *See Mattos*, 2025 WL 1263985, at *5.

With that said, the complaint does not lay out a plausible theory of how Carrington violated the HBOR provisions or federal regulations cited above. This means on Sconiers cannot pursue a UCL claim about "unlawful" acts or practices based on her current allegations. Although Sconiers alleges Carrington made "false representations," she does not say what these representations were, nor why they were false. (*See* Doc. 1-1 at 15–17.) Her allegation of "fraudulent" action is a mere label or conclusion. *See Iqbal*, 556 U.S. at 678. This means her complaint does not show that Carrington could be liable based on a theory of "fraudulent" acts or

practices.

What remains, then, is the UCL's prohibition of "unfair" acts or practices. "The UCL does not define 'unfair,' and the 'standard for determining what business acts or practices are unfair in consumer actions under the UCL is currently unsettled.'" *Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273, 284 (2024) (quoting *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n.9 (2013)). The Ninth Circuit has held that in consumer actions like this one, district courts may refer to both the "balancing" test, which the Court of Appeal described in *South Bay Chevrolet*, for example, *see Lozano*, 504 F.3d at 736 (citing 72 Cal. App. 4th at 886–87), and the "tethering" test, which the California Supreme Court laid out in *Cel-Tech*, *see id.* at 735(citing 20 Cal. 4th at 565).

Another judge of this court recently considered a strikingly similar claim of "unfair" acts and practices in *Mattos*, cited above. *See* 2025 WL 1263985, at *6. The plaintiff in *Mattos* alleged that he had become the "rightful and lawful owner" of a property after the death of the person whose name appeared on the deed of trust on a home loan. *Id.* at *1. Like Sconiers, the plaintiff in *Mattos* alleged he was the "successor in interest" and had attempted unsuccessfully to communicate with the loan's servicer. *See id.* As in the Visalia property underlying this case, the property in *Mattos* was eventually sold in a nonjudicial foreclosure sale, despite the plaintiff's efforts to prevent that sale. *See id.*

The district court found the complaint stated a claim for "unfair" acts or practices under the "balancing" test. *See id.* at *6. Under this test, the court balances the effects of an allegedly unfair practice, on the one hand, "against the reasons, justifications and motives of the alleged wrongdoer" on the other. *S. Bay Chevrolet*, 72 Cal. App. 4th a t 886 (citations and quotation marks omitted). "In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (citations, alterations, and quotation marks omitted). In *Mattos*, harm to the consumer was easy to see: the defendant servicer's actions had allegedly deprived the plaintiff of his home despite his efforts to follow "the proper procedures to take over the loan." 2025 WL 1263985, at *6. On the other side of the balance, the servicer's interests were opaque. *See id.* Careful checks might have helped to assure servicers "that they

6

are communicating with the actual borrower." *Id.* But it was "unclear how these practices would provide utility to the [servicer] such that they would outweigh the harm to the consumer in this instance." *Id.* With the benefit of favorable inferences, which the court must make in response to a motion to dismiss, the plaintiff's UCL claim was "plausible" and withstood the servicer's motion to dismiss. *Id.*

This reasoning applies equally well to Sconiers's allegations and complaint. She alleges she is the successor in interest to her father's rights; she alleges she obtained a quitclaim deed for the property in Visalia, where she lives; she alleges she had "no issues" communicating with a previous servicer, nor with "paying on the account of the mortgage loan" before Carrington took over; she alleges she attempted to contact Carrington about the property but that its representatives "would not speak with her" or explain to her what she should do to demonstrate that she was the proper successor in interest; and she alleges the property was sold as a result. (*See* Doc. 1-1 at 9–11.) Carrington has not explained what interest it has in following the policies it allegedly followed, and it has not explained why—on the face of the complaint—those policies outweigh the alleged harm that Sconiers suffered. For these reasons, the complaint states a plausible claim that Carrington's actions were "unfair" under the balancing test. It is not necessary to decide whether its actions would be "unfair" under the terms of a different legal test, such as the "tethering" test, and the Court does not reach that issue. *See Mattos*, 2025 WL 1263985, at *7 (doing the same).

In sum, the motion to dismiss claim five is granted in part, with leave to amend, to the extent Sconiers relies on the UCL's prohibitions against "unlawful" and "fraudulent" acts and practices. The motion is denied in part with respect to the UCL's prohibition against "unfair" acts and practices.

## CONCLUSION

For the reasons above, the motion to dismiss (Doc. 5) is granted in part and denied in part:

    (1)    Claims one, two, and four are **DISMISSED** without leave to amend.

    (2)    Claim three is **DISMISSED** with leave to amend.

    (3)    Claim five is **DISMISSED** in part, as specified above, with leave to

amend.

Any first amended complaint must be filed within thirty days.

IT IS SO ORDERED.

Dated:   **May 12, 2026**

_____
UNITED STATES DISTRICT JUDGE